TYRONE DAUGHERTY )
)
         Plaintiff )
)
vs. )
)
UNKNOWN INDIVIDUALS, )
INDIVIDUALLY AND IN THEIR )
OFFICIAL CAPACITY AS POLICE )
OFFICERS OF LOUISVILLE METRO )
GOVERNMENT; )
)
And )
)
CHIEF OF POLICE STEVE CONRAD )
INDIVIDUALLY AND IN HIS )
OFFICIAL CAPACITY AS CHIEF OF )
POLICE FOR LOUISVILLE METRO )
GOVERNMENT; )
)
And )
)
LOUISVILLE-JEFFERSON COUNTY )
METRO GOVERNMENT )
)
         Defendants )
)
    SERVE: )
)
    Unknown Individuals )
    Louisville Metro Police Department )
    633 West Jefferson Street )
    Louisville, KY 40202 )
)
    And )
)
    Chief of Police Steve Conrad )
    633 West Jefferson Street )
    Louisville Metro Police Department )

CASE NO. <u>3:19-CV-660-RGJ</u>

JUDGE:

Louisville, KY 40202        )
                                     )
And                           )
                                     )

Hon. Greg Fischer, Mayor     )
527 West Jefferson Street      )
Louisville, KY 40202        )
                                   )
And                           )
                                   )

Hon. Mike O'Connell        )
Jefferson County Attorney     )
600 West Jefferson Street, 2nd Floor )
Louisville, KY 40202        )

---

## AMENDED COMPLAINT

### INTRODUCTION

This is a Complaint for Damages for Violation of Civil Rights under Title 42 of the United States Code Annotated (U.S.C.A.) **§** 1981, § 1983 and under the Fourth (4th) and Fourteenth 14th Amendments to the United States Constitution; Monell-Related Claims, Respondeat Superior, Discrimination, Failure to Train, Failure to Intervene, Pretextual Stop Civil Rights Violation of Section 10 of the Constitution of the Commonwealth of Kentucky Right To Be Free From Unreasonable Searches & Seizures, Extension of Stop Civil Rights Violation of Section 10 of the Constitution of the Commonwealth of Kentucky Right To Be Free From Unreasonable Searches & Seizures, Racially Biased Policing Civil Rights Violation of Section 3 of the Constitution of the Commonwealth of Kentucky, Civil Rights Violation Pursuant to Section 3 and 10 of the Constitution of the Commonwealth of Kentucky Deliberately Indifferent Policies, Practices, Customs, Training and Supervision, Negligent Supervision and Training Under Kentucky State Law, Negligence-Ordinary and/or Gross Under Kentucky State Law.

This case involves the above listed claims against the above named
Defendants, in which the named Defendants used Racially Biased Policing, and
unlawfully seized and searched.

## JURISDICTION

1. The jurisdiction of this court invoked pursuant to the Civil Rights Act 42 U.S.C.A. §
1983; the Judicial Code, 28 U.S.C.A. §§ 1331, 1367, and 1343(a); the Constitution of the United
States. Therefore, this Court has supplementary jurisdiction powers.

## VENUE

2. Venue is proper under 28 U.S.C.A. § 1391(b). All parties reside in this judicial district,
and the events giving rise to the claims asserted here occurred within this district.

## PARTIES

3. Plaintiff Tyrone Daugherty, also referred to herein as ("Mr. Daugherty" and/or
"Plaintiff"), is and at all times relevant to this action was a citizen of the United States of America
and a resident of Louisville, Jefferson County, Kentucky.

4. Defendants, Unknown Individuals, referred to herein as ("Unknown Officer" and/or
"Unknown Officers" and/or "Unknown Officer #"), are individuals, presently unknown to Mr.
Daugherty, who to the best of Mr. Daugherty's knowledge and belief, are and were duly
appointed police officers, agents, servants, subcontractors, employees, assigns, and/or others
who worked with, on behalf of, or at the direction of the other named defendant, Defendant
Louisville-Metro Jefferson County or who were individually responsible for the injuries and
damages suffered by Mr. Daugherty.

5. Unknown Individuals, also referred to herein collectively as "Defendant Officers", now
and at all times mentioned in this complaint were on duty at all times relevant to this Complaint,
duly appointed, and were sworn police officers for the below named Defendant, Louisville-Metro
Jefferson County. Defendant Officers engaged in the conduct complained of in the course and

scope of their employment while on duty. Defendant Officers are also sued in their individual capacity.

6. Defendant Chief of Police Steve Conrad, referred to herein as "Defendant Chief" was at all times relevant to this action a duly appointed police officers and the chief of the Louisville Metro Police Department which is maintained by the Defendant Louisville-Metro Jefferson County. Defendant Chief Steve Conrad was and is employed by the Defendant Louisville-Metro Jefferson County.

7. Defendant Louisville-Metro Jefferson County referred to herein as "Defendant City", is a city in Kentucky and now, and at all times mentioned in this complaint was, a municipal corporation organized and existing under the laws of the State of Kentucky, and maintains a Police Department, with duly appointed police officers pursuant to the mandate laws of the State of Kentucky, as amended and the said Defendant is a city of the first class.

8. Unknown Officer, Unknown Officers, Unknown Officer "#", Defendant Officers, Chief, and City are referred to herein collectively as "Defendants".

## COMMON FACTUAL ALLEGATIONS

9. All events complained of herein occurred in Jefferson County, Kentucky.

10. Upon information and belief, on or about September 18, 2018, Defendants Unknown Officers were on patrol for the Louisville-Metro Police Department in Louisville, Jefferson County, Kentucky.

11. On the same said date, around 6:15 p.m., E.S.T., Mr. Daugherty a thirty-four (34) year old African-American male, United States citizen, was driving his sport car, a 2015 Dodge Challenger, in a predominant African-American community traveling east bound on Hale Avenue, Louisville Kentucky, when he observed a suspicious looking car following him very closely.

12. Mr. Daugherty was traveling with his passenger, a male individual who is also an African-American, United States citizens, and for which Mr. Daugherty is the said individual's primary home care provider.

13. Upon information and belief, Unknown Officer (1) was inside the car that Mr. Daugherty noticed following him very closely.

14. Upon information and belief, the said car that Mr. Daugherty noticed following him very closely was an unmarked Louisville-Metro Police cruiser.

15. While driving east bound on Hale Avenue approaching Cecile Avenue, in Louisville, Jefferson County, Kentucky, Mr. Daugherty made a right turn onto Cecile Avenue.

16. That is when the said Defendant activated his government issued emergency lights, signaling to Mr. Daugherty that a traffic stop was being initiated.

17. At all times material hereto, Mr. Daugherty never consented to any searches.

18. Mr. Daugherty stopped his vehicle in response to the said Unknown Officer's show of authority.

19. Then the Unknown Defendant Officer (1) approached Mr. Daugherty's driver side window and immediately informed him of two minor traffic violations.

20. Unknown Defendant Officer (1) asked Mr. Daugherty if there were any guns in the vehicle, and Mr. Daugherty informed him that he had a legal gun in the vehicle along with a permit to carry the legal gun.

21. Then the Unknown Defendant Officer (1) opened Mr. Daugherty's driver side door and ordered Mr. Daugherty to exit his vehicle.

22. Mr. Daugherty asked why he was being forced out of his vehicle and the said Defendant told Mr. Daugherty, in the words of effect, —*because I am giving you a lawful order and the Supreme Court states that I do not have to give you an excuse.*

23. Mr. Daugherty told the said officer that he did not consent to any searches.

24. By this time, at least four more Unknown Defendants arrived to the scene in which one was accompanied with a police dog (K9).

25. Unknown Defendant (2) had the K9 search Mr. Daugherty vehicle by instructing the said K9 to jump on the driver side door and other sections of the said vehicle.

26. After Unknown Defendant (1) took possession of Mr. Daugherty 's driver license and ran a criminal records search of Mr. Daugherty, which concluded to negative results.

27. After the said Unknown Defendant (1) search was completed, Mr. Daugherty and his passenger were still forced to stand outside of the car while the police dog and other Unknown Defendants Officers continued to search Mr. Daugherty's vehicle.

28. Mr. Daugherty's person was searched, his trunk and the items within were also searched.

29. Plaintiff was unreasonably detained and falsely imprisoned for an unreasonable period of time without freedom to move.

30. On information and belief, at least one Defendant Unknown Defendants, whom were at the scene of the traffic stop, unreasonably detained Mr. Daugherty, and by their omissions and failure to act or protest the actions of the said alleged Defendant, Unknown Officer (1) and the other present Unknown Officers impliedly consented to the offensive, unreasonable, and unlawful behavior and committed acts towards Mr. Daugherty and his passenger.

31. Then Defendants Unknown Officer (in which, upon information and belief to be Detective K. Crawford and K. Holman) willfully issued a Commonwealth of Kentucky Uniform Citation upon Mr. Daugherty in an attempt to justify the traffic stop and search of Mr. Daugherty's vehicle and persons of Mr. Daugherty and his passenger and cover-up the illegal actions.

32. Unknown Defendant (1), forced Mr. Daugherty and his passenger to remove their shoes and stand on the dirty asphalt.

33. In that said citation Mr. Daugherty was charged with violating Kentucky Revised Statutes ("KRS") 189.110, Unobstructed windshields -- Display of American flag -- Windshield wipers, despite that none of the officers tested and/or compared Mr. Daugherty's window tint to the legal standards, and KRS 189.380, Signals [*Failure to or Improper Signal*], and ordered to appear before the Jefferson County District Court to be arraigned.

34. Mr Daugherty was actually stopped because he is an African American.

35. Mr. Daugherty hired an attorney whom appeared before the Kentucky Jefferson County District court many times in order to defend Mr. Daugherty from the criminal prosecution initiated by said Unknown Defendants to prove his innocence.

36. On April 25, 2019, Mr. Daugherty pleaded guilty to KRS 189.380, Signals [*Failure to or Improper Signal*], and the charge of KRS 189.110, Unobstructed windshields -- Display of American flag -- Windshield wipers and KRS 189.380 was dismissed with no trial.

37. In Louisville, 70 percent of the residents are white while roughly 20 percent are black, according to DATA USA that cited the US Census Bureau data from 2015. (DATA USA, *Jefferson County, KY*, https://datausa.io/profile/geo/jefferson-county-ky/#category_heritage (December 09, 2018)).

38. However, according to an article published on December 11, 2017, by the Courier-Journal, a local news media company, "Black drivers in Louisville were nearly twice as likely to have their car searched during routine traffic stops than white drivers in 2016, according to a study from the University of Louisville." (Courier-Journal, *Louisville Police Searched Black Drivers More Often Than White Drivers in 2016, Study Shows*, https://www.courier-journal.com/story/news/local/2017/12/11/louisville-police-searched-black-drivers-more-often-white-study/939673001/ (Published December 11, 2017, 12:38 p.m. EST; Last updated December 11, 2017 12:38 p.m. EST))

39. Furthermore, according to the Courier Journal's analysis of "130,999" traffic stops in Louisville from 2016 to 2018 in which citations were issued, African Americans were disproportionately stopped and three times as likely to be searched as white drivers.  (Courier-Journal, *Black drivers in Louisville are searched nearly three times more than white motorists,* https://www.courier-journal.com/story/news/crime/2019/06/07/lmpd-data-shows-black-drivers-searched-far-more-than-whites/1369516001/ (Published June 07, 2019, 11:10 a.m. EST; Last updated June 08, 2019 4:15 p.m. EST)).  Moreover, in September of 2018, the said Police Department was slammed for racial profiling after a black college president was pulled over by a white officer of the said Defendant City's police department for a minor improper turn and having lining on his license plate.  (DailyMail.com, *Kentucky police is slammed for racial profiling after black college president is pulled over by white cop for a minor improper turn and having plastic lining on his license plate,* https://www.dailymail.co.uk/news/article-6185169/Police-review-traffic-stop-black-college-president.html (Published September 19, 2018, 10:00 a.m. EST; Last updated September 19, 2018, 11:04 a.m. EST)).

40. In regards to how the Louisville Metro Police Department has disproportionately stopped black drivers as to white drivers, the Defendant Chief has been quoted saying, "that in retrospect, routinely stopping motorists 'is something we should have done differently.'" *id.*

41. Also, following the said Police Department's reported disproportionate stops of black drivers as to white drivers, a Jefferson County Circuit Judge, in a criminal case, ruled that the Louisville police coerced an African American driver into an illegal traffic search for a gun. (Courier-Journal, *Louisville police coerced driver into illegal traffic search for gun, judge rules,* https://www.courier-journal.com/story/news/crime/2019/06/19/louisville-police-traffic-search-collapses-judges-ruling/1503367001/ (Published June 19, 2019, 7:48 p.m. EST; Last updated June 20, 2019 8:49 a.m. EST)), and an African American couple sues LMPD officers for a traffic stop because they were black and in a nice car. (Courier-Journal, *Couple sues LMPD officers*

*for traffic stop because they were 'black and in a nice car'*, https://www.courier-journal.com/story/news/crime/2019/08/16/louisville-kentucky-police-officers-sued-couple-over-traffic-stop/2020800001/ (Published August 16, 2019, 7:49 .m. EST)).

42. Moreover, since January of 2019, there have been at least four (4) lawsuits filed asserting that that the Defendants Chief Conrad and City have violated African American drivers rights while initiating traffic stops. See *Shaun A. Wimberly, Sr. vs. Officer Miller, Louisville-Jefferson County Metro Government, et. al.*, 18-CI-007161 (Jefferson County, Ky. Cir. (Jan. 2019)); *Tae-Ahn Lea vs. Steve Conrad, et. al.*, 3:19-CV-419-RGJ (W.D. Ky., Louisville, (June 2019)); *Jamaj Johnson vs. Louisville-Jefferson County Metro Government, et. al.*, 3:19-CV-431-RGJ (W.D. Ky., Louisville, (June 2019)); *Demetria Firman and Anthony Parker, Sr. vs. Steve Conrad, et. al.*, 3:19-CV-564-DJH (W.D. Ky., Louisville, (August 2019))

43. Mr. Daugherty in this case was not stopped because of any justified suspicion that they he was involved in criminal activity; rather, he was stopped by members of the Defendant City's Police Department because Mr. Daugherty was an African-American.

44. The Defendant City's Police officers, Defendant Unknown Officers, while on police duty, routinely position their police vehicles in predominant African-American communities and disproportionately stopped and search black drivers' persons and vehicles, because they are African-American.  The police officers of the Defendant City would select African-American persons to stop based on the fact that they are African-American and—after deciding to stop them because they are believed and/or know for them to be African-American—search them for some reason that can be stated by the officer as probable cause to justify the stop. The said officers routinely asserts that "obstructed view" were their probable cause for the stop and failing to use a turn sign while turning.  Sometimes, the officer asserts that the African-American person's license plate was not properly illuminated, that he or she did not use a turn signal properly, that he or she failed to yield (but without being involved in a traffic accident), or some

other very minor issue that is either not an infraction, is a very minor infraction that is generally only used by police officers when there is another motive for the traffic stop, or that is very difficult to substantiate and results in a "he said, she said" situation where the police officer's testimony would routinely be credited as true by the local city court.

45. The number of African-American contacts with Defendant City's Police Officers in there professional duties are, upon information and belief, heavily disproportionate to the percentage of African-American living in or frequenting the community.

46. Upon information and belief, Defendant City's Police Department stops and cites a disproportionate number of African-Americans and/or persons with physical characteristics that would tend to identify them as African-American, and does not use—or seldom uses—the same criteria or tactics in his interaction with non-African-Americans.

47. Defendant City's police Department, upon information and belief, routinely stope and search and charged African-American drivers for minor traffic violations than white drivers. Upon information and belief, Defendant City police department does not use the practice described in this paragraph when dealing with non-African-American.

48. The Defendant City is involved in a conspiracy amounting to a common plan or design to: (a) commit and actively ignore due process and equal protection for African-American persons; and (b) to profit from (1) African-American' relative inability to seek representation and communicate complaints of police misconduct, (2) their general disadvantage because of race status or lack of financial resources and/or understand to present themself before of our legal system, and (3) the "hold-over" fear that African-American often have of police because of historical police practices in the United States. The Defendant City has designed a scheme to turn these demographic characteristics into a financial profit for Defendants, to the discrimination, detriment, and harm of African-American. Alternatively, some or all of the Defendants engage in the conduct described herein because of a general racist desire to

discourage African-American persons from living in, doing business in, or frequenting the community.

49. Defendant City and Defendant Chief have failed to properly train and supervise Defendant Unknown Officers, and have knowingly allowed the said Defendant Unknown Officers to ignore due process and equal protection for African-American persons, knowingly allowing the said Defendant to target motorists for stops and searches on the basis of race and national origin, all under the color of law.

### FIRST CAUSE OF ACTION
Monell-Related Cause of Action
**(Constitutional Violations Under 42 U.S.C.A. § 1983)**

50. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

51. It is the custom, practice and policy of police officers and/or their supervisors/agents and/or other employees of the Defendant City's police department to perform the following acts and/or omissions in connection with traffic stops of African American drivers:

(a) Preforming pretextual traffic stops in which police officers are stopping African American drivers because of their race for traffic violations, minor or otherwise to allow the officers to conduct a non-traffic violation investigate influenced exclusively by the race of the driver, in which the police officers searches the drivers and their vehicles for separate and unrelated non traffic suspected criminal offenses, that were subjectively formed solely from racially bias motivates. In other words, police officers are performing traffic stops of black drivers more than white drivers to search their persons and property for non-traffic violations, before observing a legitimate traffic violation.

(b) generate documentation to cover-up for racially biased policing and the misconduct of police officers;

(c) supervisory individuals from the Defendant City fail to properly discipline officers from the police department that have committed acts of racially biased policing on others; and

(d) supervisory individuals from Defendant City fail to properly investigate complaints of misconduct perpetrated by the Defendant City's police officers, on African American drivers. This practice and/or custom has gone unchecked and been allowed to exist in the city of Louisville for a significant period of time; so much so, that police officers for Defendant City recognize that they will not be punished for committing such acts and that, in fact, these acts are either permitted or quietly consented to by superior officers of Defendant City in order to permit such conduct to reoccur.

52. A code of silence exists, between the officers of the Defendant City's police department so as to obstruct the legal process (preventing the free flow of honest information with regard to racially biased policing and acts of misconduct).

53. Defendant Chief, has acted with deliberate indifference and reckless disregard by failing to properly insure that the wrongful conduct of his police staff is properly investigated and discipline police officers who have committed racially biased policing towards others.

54. Defendant City is a duly incorporated municipal corporation and is the employer and principal of the Defendants Chief as well as the other officers referred to in this Complaint, as indicated in the Monell claim alleged here. At all times material to this Complaint, Unknown Defendants and Defendant Chief were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the Defendant City.

## SECOND CAUSE OF ACTION
### Supplementary Claim for Respondeat Superior

55. Each of the above Paragraphs in this Complaint is incorporated as if restated fully here.

56. The described acts of Defendant, Unknown Officers, were in the scope of their employment and therefore Defendant City, as principal, is liable for the actions of its agents under the doctrine of respondeat superior.

WHEREFORE, should, Defendant Unknown Officers, be found liable for any state claims alleged, Plaintiff demands judgment against Defendant City and such other additional relief, as this Court deems equitable and just.


## THIRD CAUSE OF ACTION
### Violation of Civil Rights under Title 42 of the United States Code Annotated (U.S.C.A.) § 1983 and under the Fourth (4th) and Fourteenth 14th Amendments to the United States Constitution
### (Against Defendants Unknown Officers, Inclusive)

57. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

58. This cause of action is brought pursuant to 42 U.S.C.A. § 1983 and the United States Constitution.

59. On or about September 18, 2018, Mr. Daugherty possessed the rights guaranteed by the United States Constitution, including but not limited to the Fourth and Fourteenth Amendment rights against unlawful and unreasonable search, seizure, and the right to be free from unlawful detention and/or arrest by police officers acting under the color of law.

70. On the same said date, Defendant Unknown Officers, inclusive, acted with deliberate indifference or with reckless disregard for Mr. Daugherty's rights, by targeting him for his race.

71. On the same said date, Defendants Unknown Officers searched Mr. Daugherty without probable cause, and illegally seized, detained and/or arrested Mr. Daugherty with reckless disregard of his civil rights, as set forth in detail in Plaintiff's factual allegations.

72. Mr. Daugherty is informed and believe and therefore allege that Defendants engaged in the described unlawful acts against him, and facilitated, encouraged and/or instigated such unlawful, racially-motivated and unconstitutional acts, and failed to intervene to stop such acts, nor render any assistance knowing the severity of the injustice being inflicted on him.

73. At the time of the described wrongful acts by Defendants, Plaintiff Mr. Daugherty was not engaged in criminal activity of a nature to warrant his unreasonable search, seizure, or battery under the color of law made against him. At the time of the wrongful acts, Mr. Daugherty was not displaying any behavior to justify being forced out of his car and unreasonably detained by Defendants Unknown Officers. Moreover, the said Defendants lacked probable cause, reasonable suspicion or legal justification to detain and/or arrest Mr. Daugherty on any basis beyond a reasonable time to issue a traffic citation.

74. The unreasonable search and seizure of Mr. Daugherty was entirely unjustified by any of the actions of Mr. Daugherty, and constituted violations of his civil rights.

75. The unlawful seizure, detention and/or arrest of Mr. Daugherty was the proximate cause of the damages suffered by him, who not only was unreasonably detained for the purposes of the traffic stop, but was forced under color of law to helplessly watch while standing with no shoes on and forced to be searched again, before being allowed back into his vehicle.

76. On or about September 18, 2018, Defendants Unknown Officers acted specifically with the intent to deprive Mr. Daugherty of the following rights under the United States Constitution:

    (a) Freedom from unreasonable searches;

(b) Freedom from unreasonable seizures in the form of unlawful detention and/or arrest by police officers;

(c) Freedom from a deprivation of Liberty without due process of law;

(d) Freedom from maliciously being subjected to criminal proceedings; and

(e) Freedom to move about freely as a citizen of the United States of America.

77. Defendants subjected Mr. Daugherty to the mentioned deprivations either by actual malice, deliberate indifference or reckless disregard for his rights under the United States Constitution and the laws of the state of Kentucky.

78. Unknown Defendants Officers at the scene acted at all times knowing or should have known that their conduct went against the legal authorized practices, customs, procedures and policies of the Police Department of the Defendant City and was unlawful conduct in violation of the Fourth (4th) Amendment and the laws of the state of Kentucky. However, said Unknown Defendants knew that Defendant Chief and City, acting through the chief policymaker Defendant Chief, had ratified, condoned, and acquiesced to their specific acts of depriving citizens, such as the Plaintiff, of their Constitutional rights and abusive conduct through unauthorized, yet established, practices, customs and procedures and thus did not fear any repercussions from Defendant City, or Defendant Chief in taking the unlawful action against Mr. Daugherty .

79. As the direct and proximate cause of the mentioned acts of Defendants, Plaintiff suffered psychological injury, physical injuries, and severe emotional distress.

80. By reason of the mentioned acts and omissions of Defendants, Mr. Daugherty was caused to incur special damages, including medical expenses and loss of earnings, and general damages in an amount to be proved at trial.

81. By reason of the mentioned acts and omissions of Defendants, Mr. Daugherty was required to retain counsel to institute and prosecute this action, and Mr. Daugherty request

payment by Defendants of a reasonable sum as and for attorney's fees pursuant to 42 U.S.C.A. § 1988.

82. The mentioned acts of Defendants were willful, wanton, malicious and oppressive, thus justifying the awarding of exemplary and punitive damages as to the individually-named Defendants.

WHEREFORE, Plaintiff requests Judgment against the Defendants, and each of them, as follows:

a. Trial by jury;

b. General damages, in an amount to be determined by proof at trial;

c. Punitive damages, according to proof;

d. Attorney's fees, costs and expenses as authorized by 42 U.S.C.A. § 1988, according to proof;

e. Costs and interest, according to law;

f. For leave to amend his Complaint; and,

g. Such other and further relief that the court considers proper.

### FOURTH CAUSE OF ACTION
Violation of Civil Rights under Title 42 of the United States Code Annotated (U.S.C.) § 1983 Via The Due Process Clause of the Fourteenth (14th) Amendments to the United States Constitution; The Equal Protection Clause of the Fourteenth (14th) Amendments to the United States Constitution; The Due Process Clause of the Fifth (5th) Amendments to the United States Constitution; and The Right to Be Free From Unreasonable Search and Seizure under the Fourth (4th)Amendments to the United States Constitution.
**(Against Defendants Chief and Unknown Officers)**

83. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

84. The above-described race and/or national origin motivated traffic stops, detentions, citations, and vehicle tows were in violation of 42 U.S.C.A. § 1983, via the following constitutional rights:

a. The Due Process Clause of the Fourteenth Amendment to the United States Constitution;

b. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

c. The Due Process Clause of the Fifth Amendment to the United States Constitution;

d. The right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution.

85. The actions of Defendant Chief in his individual capacity and Defendant Unknown Officers in their individual capacity on this Cause were such as to justify punitive damages against them.

86. The mentioned acts of said Defendants were willful, wanton, malicious and oppressive, thus, again, justifying the awarding of exemplary and punitive damages as to the individually-named Defendants.

WHEREFORE, Plaintiff requests Judgment against the said Defendants, and each of them, as follows:

a. Trial by jury;

b. General damages, in an amount to be determined by proof at trial;

c. Punitive damages, according to proof;

d. Attorney's fees, costs and expenses as authorized by 42 U.S.C.A. § 1988, according to proof;

e. Costs and interest, according to law;

f. For leave to amend his Complaint; and,

g. Such other and further relief that the court considers proper.

## FIFTH CAUSE OF ACTION
### Discrimination Under 42 U.S.C.A. § 1981

87. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

88. Said Defendants' interactions with Mr. Daugherty as described herein denied Mr. Daugherty the full and equal benefit of all laws and denied him his rights to have the same punishment, pains, penalties, taxes, licenses, and exactions as non-African Americans, as required by 42 U.S.C.A. § 1981 and its progeny, and saidDefendants' actions as described herein are in violation thereof.

89. The actions of Defendant Chief in his individual capacity and Defendant Unknown Officers in their individual capacity on this Cause were such as to justify punitive damages against them.

90. On or about September 18, 2018, and at all times relevant to the events described above, Defendant Unknown Officers and Chief were employees, agents, and/or representatives of Defendant City.

91. The discriminatory practices described above were carried out:

    a. At the direction of and with the consent, encouragement, knowledge, and ratification of the Defendants City and Chief;

    b. Under Defendant City and Chief's authority, control, and supervision; and/or

    c. Within the scope of employees' employment.

92. Defendant City is liable for the unlawful acts of its employees, agents, and/or representatives directly and/or under the doctrine of respondeat superior.

93. Defendant City engaged, through its police department, intentional discrimination based on Mr. Daugherty 's race, color, religion, ancestry, and/or national origin and caused Mr.

Daugherty to suffer deprivation of his right to freedom of travel, and to be free from unlawful detention and/or arrest by police officers acting under the color of law.

94. Defendant City's actions violated 42 U.S.C.A. § 1981.

95. As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Mr. Daugherty suffered and will continue to suffer humiliation, anxiety to travel, shame, despair, embarrassment, depression, mental pain, anguish, injury to his reputations, and economic losses, all to Mr. Daugherty 's damage in an amount to be proven at time of trial.

96. As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Mr. Daugherty , a frequent traveler, has endured and will continue to endure economic losses and emotional stress due to the difficulty of finding alternate routes to travel while driving as an African-American male.

WHEREFORE, Plaintiff requests Judgment against the Defendants, and each of them, as follows:

a. Trial by jury;

b. General damages, in an amount to be determined by proof at trial;

c. Punitive damages, according to proof;

d. Attorney's fees, costs and expenses as authorized by 42 U.S.C.A. § 1988, according to proof;

e. Costs and interest, according to law;

f. For leave to amend his Complaint; and,

g. Such other and further relief that the court considers proper.

### SIXTH CAUSE OF ACTION
Failure to Train Under 42 U.S.C.A. § 1983

97. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

98. Defendants City and Chief, acting under the color of state law and through its Police Department's employees, agents, and/or representatives, intentionally and knowingly as an act of discrimination based on race, religion, ethnicity, and/or national origin, violated Mr. Daugherty's constitutional rights.

99. Out of deliberate indifference and/or unofficial custom and policy, said Defendants failed to adequately train or supervise the police officers as to the discrimination laws and what constitutes unlawful discriminatory conduct.

100. As a result, Mr. Daugherty was detained without probable cause and searched for reasons devoid of any legitimate, nondiscriminatory concern.

101. Said Defendants should have known, trained, and instructed its employees, agents, and/or representatives to be aware that the act of driving while being an African-American male is not a security threat or a form of suspicious illegal activity.

102. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, Mr. Daugherty has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputations, all to Mr. Daugherty's damage in an amount to be proven at time of trial.

WHEREFORE, Plaintiff requests Judgment against the Defendants, and each of them, as follows:

a. Trial by jury;

b. General damages, in an amount to be determined by proof at trial;

c. Attorney's fees, costs and expenses as authorized by 42 U.S.C.A. § 1988, according to proof;

d. Costs and interest, according to law;

e. For leave to amend his Complaint; and,

f. Such other and further relief that the court considers proper.

## SEVENTH CAUSE OF ACTION
Failure to Intervene, In Violation of 42 U.S.C.A. § 1983

103. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

104. One or more of the Defendants Unknown Officers had a reasonable opportunity to prevent the other Defendants Unknown Officers—had they been so inclined but they failed to do so— from depriving Mr. Daugherty the following: (a) the freedom from unreasonable searches; (b) freedom from unreasonable seizures in the form of unlawful detention and/or arrest by police officers; (c) freedom from a deprivation of Liberty without due process of law; (d) freedom from maliciously being subjected to criminal proceedings; and (e) the freedom to move about freely as a citizen of the United States of America.

105. As a result of the Defendant Officers' failure to intervene, Mr. Daugherty was humiliated, embarrassed, and suffered emotional distress. In addition, Mr. Daugherty suffered financial losses stemming from legal fees related to the criminal prosecution of the case that was brought against him in the Kentucky Jefferson County District Court.

106. The misconduct described in this Cause was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others.

107. The misconduct described in this Cause was undertaken pursuant to the policy and practice of Defendant City's Police Department in the manner described above and fully herein this Complaint.

108. The misconduct described in this Cause was undertaken by the said Defendants Unknown Officers within the scope of their employment and under color of law such that their employer, Defendant City, is liable for their actions.

WHEREFORE, Plaintiff requests Judgment against the Defendants, and each of them, as follows:

    a. Trial by jury;

    b. General damages, in an amount to be determined by proof at trial;

    c. Attorney's fees, costs and expenses as authorized by 42 U.S.C.A. § 1988, according to proof;

    d. Costs and interest, according to law;

    e. For leave to amend his Complaint; and,

    f. Such other and further relief that the court considers proper.

## EIGHTH CAUSE OF ACTION
### Battery Claim Under Kentucky State Law

109. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

110. Defendant Unknown Officer intentionally grabbed Mr. Daugherty's arms and search his person, without consent and without justification.

111. Defendant Unknown Officer's conduct were in violation of Kentucky's law.

112. The mentioned actions of Defendant Unknown Officers was the direct and proximate cause of the violations set forth above.

WHEREFORE, Mr. Daugherty demands compensatory damages, jointly and severally, from Defendant Unknown Officers, punitive damages and costs. Mr. Daugherty also demands whatever additional relief this Court deems equitable and just.

WHEREFORE, Mr. Daugherty demands compensatory damages against Defendant City, costs and attorney fees. Mr. Daugherty also demands whatever additional relief this Court deems equitable and just.

113. Each of the above Paragraphs in this Complaint is incorporated as if restated fully here.

114. Defendant City is and was at all times mentioned, the employer of each Defendant Unknown Officers.

115. Defendants Unknown Officers, as alleged above, committed the wrongful acts under color of law and in the scope of his/her employment as an employee of Defendant City.

WHEREFORE, should Defendant Unknown Officer be found liable for any of the alleged counts in this cause, Mr. Daugherty demands that Defendant City pay any judgment obtained against Defendant Unknown Officer as a result of this Complaint.

## NINTH CAUSE OF ACTION
Pretextual Stop Civil Rights Violation of Section 10 of the Constitution of the Commonwealth of Kentucky Right To Be Free From Unreasonable Searches & Seizures
(Against Defendant Officers, Individually and in their Official Capacity)

116. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

117. This Cause is alleged against Defendant Officers in their individual capacities.

118. At all times material hereto, said Defendants' actions and omissions were made under the color of authority and law as law enforcement officers for the Louisville-Metro Police Department.

119. On or about September 18, 2018, Defendants violated Mr. Daugherty 's clearly established state constitutional rights by effectuating a pretextual warrantless automobile stop.

120. Said Defendants demonstrated a deliberate indifference to and reckless disregard of Mr. Daugherty 's civil and constitutional rights.

121. Said Defendants' actions were willful, wanton, unlawful, and in gross disregard of Mr. Daugherty 's civil rights, justifying an award of punitive damages.

122. Mr. Daugherty 's hereby request reasonable attorney fees and costs associated with prosecuting this action as said Defendants' violation of his constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

123. As a direct and proximate result of the said Defendants' illegal and unjustified conduct, Mr. Daugherty was injured and is entitled to recover for what he has suffered in the past and will suffer in future suffering, including:

(a.)     Deprivation of his constitutional rights;

(b.)     Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

(c.)     Actual and Compensatory Damages;

(d.)     All expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

(f.) Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs.

**TENTH CAUSE OF ACTION**
Extension of Stop Civil Rights Violation of Section 10 of the Constitution of the Commonwealth of Kentucky Right To Be Free From Unreasonable Searches & Seizures
(Against Defendant Officers, Individually)

124. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

125. This Cause is alleged against Unknown Defendant Officers in their individual capacities.

126. At all times material hereto, said Defendants' actions and omissions were made

under the color of authority and law, as law enforcement officers for the Louisville-Metro Police Department.

127. On or about September 18, 2018, said Defendants violated Mr. Daugherty 's clearly established state constitutional rights by extending the vehicle stop beyond what was reasonably necessary to resolve the alleged basis for the stop.

128. Said Defendants demonstrated a deliberate reckless disregard of and indifference to Mr. Daugherty 's civil and constitutional rights.

129. Said Defendants' actions were willful, wanton, unlawful, and in gross disregard of Mr. Daugherty 's civil rights, justifying an award of punitive damages.

130. As a direct and proximate result of the said Defendants' illegal and unjustified conduct, Mr. Daugherty  was injured and is entitled to recover for what he has suffered in the past and will suffer in future suffering, including:

(a.) Deprivation of his constitutional rights;

(b.) Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

(c.) Actual and Compensatory Damages;

(d.) All expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

(e.) Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff pray for Judgment against the aforementioned Defendants as follows:

(a.) Actual, Compensatory, Consequential, and all other allowable damages against said Defendant in an amount yet to be determined;

(b.) Mr. Daugherty hereby request reasonable attorney fees and costs associated with prosecuting this action as said Defendants' violation of his constitutional right was oppressive, conniving, harsh, cruel, and/or tyrannical.

(c.) Compensation for violation of his constitutional rights, mental anguish, and humiliation;

(d.) Plaintiff's cost in this action, including reasonable attorney's fees and costs;

(e.) Punitive damages; and

(f.) Any other relief the Court deems just and equitable.

## ELEVENTH CAUSE OF ACTION
Racially Biased Policing Civil Rights Violation of Section 3 of the Constitution of the Commonwealth of Kentucky
(Against Defendant Officers, Individually)

131. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

132. This Cause is alleged against Unknown Defendant Officers in their individual capacities.

133. At all times material hereto, said Defendants' actions and omissions were made under the color of authority and law as law enforcement officers for the Louisville-Metro Police Department.

134. The actions and omissions of the said Defendants were undertaken with the intent to discriminate against Mr. Daugherty on account of his race and the color of his skin, denying Mr. Daugherty his Ky Const § 3 right to equal protection under the law.

135. Defendants singled Mr. Daugherty out for harassment and treated him differently from other similarly situated persons.

136. Defendants' differential treatment of Mr. Daugherty was intentional, willful, malicious, arbitrary, irrational, motivated by ill-will and racial bias, and exhibited a conscious disregard or reckless indifference to Mr. Daugherty 's rights.

137. As a direct and proximate result of the said Defendants' illegal and unjustified conduct, Mr. Daugherty was injured and is entitled to recover for what he has suffered in the past and will suffer in future suffering, including:

(a.) Deprivation of his constitutional rights;

(b.) Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

(c.) Actual and Compensatory Damages;

(d.) All expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

(e.) Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff pray for Judgment against the aforementioned said Defendants as follows:

(a) Actual, Compensatory, Consequential, and all other allowable damages against said Defendant in an amount yet to be determined;

(b.) Mr. Daugherty hereby request reasonable attorney fees and costs associated with prosecuting this action as said Defendants' violation of his constitutional right was oppressive, conniving, harsh, cruel, and/or tyrannical.

(c.) Compensation for violation of his constitutional rights, mental anguish, and humiliation;

(d.) Plaintiff's cost in this action, including reasonable attorney's fees and costs;

(e.) Punitive damages; and

(f.) Any other relief the Court deems just and equitable.


## TWELFTH CAUSE OF ACTION
Civil Rights Violation
Pursuant to Section 3 and 10 of the Constitution of the Commonwealth of Kentucky
Deliberately Indifferent Policies, Practices, Customs, Training and Supervision
(Against Defendants Chief, Individually, and City)

138. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

139. At all times material hereto, Defendant Chief's actions and/or omissions were made under the color of authority as the Chief of Police and this Cause is made against him in his individual capacity.

140. Defendants Chief and City are responsible for establishing, maintaining, and enforcing the official policies, procedures, patterns, practices, and/or customs of the Louisville-Metro Police Department for traffic stops, detention of citizens, handcuffing, interrogations, vehicle searches, citizen searches, documentation of citizen/police interactions, and racially-neutral enforcement.

141. Defendant City is charged with the duty to ensure that its law enforcement officers are properly trained and supervised.

142. As Chief of Police, Defendant Chief is ultimately responsible for the training and supervision of his officers and employees.

143. Said Defendants violated Mr. Daugherty 's federal constitutional rights by:

(i) Permitting Louisville-Metro Jefferson County police officers to violate the constitutional rights of citizens;

(ii) Ratifying and approving the unlawful stopping, seizure, and detaining of citizens;

failing to enforce policies and implement policies preventing the unlawful stopping, seizure, and detaining of citizens;

(iii) Failing to properly review citizen complaints against Louisville-Metro Jefferson County police officers;

(iv) Tolerating, encouraging, and permitting collusive statements by involved officers in such situations;

(v) Failing to adopt and/or enforce policies to document citizen interactions that do not result in arrest or citation;

(vi) Failing to monitor and address racially-disproportionate actions taken by Louisville-Metro Jefferson County police officers;

(vii) Failing to adopt a system to identify, track, and monitor problematic police behavior and patterns of unconstitutional conduct;

(viii) Failing to take adequate disciplinary measures against Louisville-Metro Jefferson County police officers who violate the civil rights of citizens;

(iv) Failing to train and/or supervise properly Defendant Officers in the constitutional requirements for the stopping, seizure, and detaining of citizens;

(v) Failing to conduct sufficient training or supervision with respect to the rights of citizens to be free from race-based policing; and

(vi) Failing to implement adequate maintenance training and properly focused maintenance training.

144. Defendants Chief and City's policies, procedures, customs, and/or practices caused Mr. Daugherty 's constitutional and federal rights to be infringed upon as set forth herein and in the other claims.

145. The infringed upon rights of Mr. Daugherty resulted from a conscious or deliberate choice by the defendants to follow a course of action from among various available alternatives.

146. The need for the aforementioned training and supervision was obvious and it was foreseeable that the inadequacy of Defendant Officers' training and supervision was likely to result in the violation of constitutional rights.

147. Defendants Chief and City demonstrated a deliberate indifference to and/or reckless disregard of Mr. Daugherty 's constitutional rights and those similarly situated to him.

148. Said Defendants failure to train and supervise Defendant Officers caused the violations of Mr. Daugherty's constitutional and federal rights as set forth herein and in the other claims and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

149. As a direct and proximate result of the Defendants Chief and City's illegal and unjustified conduct, Mr. Daugherty was injured and is entitled to recover for what he has suffered in the past and will suffer in future suffering, including:

(a.) Deprivation of his constitutional rights;

(b.) Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

(c.) Actual and Compensatory Damages;

(d.) All expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

(e.) Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff pray for Judgment against the aforementioned Defendants as follows:

(a.) Actual, Compensatory, Consequential, and all other allowable damages against Defendant in an amount yet to be determined;

(b.) Compensation for violation of his constitutional rights, mental anguish, and humiliation;

(c.) Mr. Daugherty hereby request reasonable attorney fees and costs associated with prosecuting this action as said Defendants' violation of his constitutional right was oppressive, conniving, harsh, cruel, and/or tyrannical.

(d.) Plaintiff's cost in this action, including reasonable attorney's fees and costs; and

(e.) Punitive damages; and

(f.) Any other relief the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demand a trial by jury in these matters on all counts to which Plaintiff is entitled to a jury.

Respectfully Submitted,

SHAUN A. WIMBERLY, SR.
Wimberly & Associates, PLLC.
325 West Main Street
Suite 1816 Waterfront Plaza
Louisville, KY. 40202
Office: (502) 208-1887
Fax: (502) 208-1858
**COUNSEL FOR PLAINTIFF**