UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-660-RGJ

TYRONE DAUGHTERY                                                                    Plaintiff

v.

LOUISVILLE-JEFFERSON COUNTY                                              Defendants
METRO GOVERNMENT, et al.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Tyrone Daughtery alleges violations of state and federal law against Defendants Louisville-Jefferson County Metro Government  ("Louisville Metro"), Steven Conrad, Chief of the Louisville Metro Police Department ("Conrad"), and Unknown Officers of the Louisville Metro Police Department ("Unknown Officers").  [DE 2 at 32].  Defendants move to dismiss the claims against Louisville Metro and Conrad.  [DE 7].  Briefing is complete and the matter is ripe. [DE 14; DE 15].  For the reasons below, Defendants' Motion to Dismiss [DE 7] is **GRANTED IN PART AND DENIED IN PART**.

## I.      BACKGROUND

Plaintiff, an African-American, was driving through a "predominant [sic] African-American community" in Louisville, Kentucky when he noticed a "suspicious looking car following him very closely."  [DE 2 at 35].  After Plaintiff made a right-hand turn, Unknown Officers, who were following him in an "unmarked Louisville-Metro Police cruiser,"  activated the car's "government issued emergency lights, signaling to [Plaintiff] that a traffic stop was being initiated."  *Id.* at 36.  Plaintiff  stopped his car "in response to the said Unknown Officer's show of authority."  *Id.*

Unknown Officers approached his "driver side window and immediately informed him of two minor traffic violations" and then asked him "if there were any guns in his vehicle." *Id.* Plaintiff told the Unknown Officers that he "had a legal gun in the vehicle along with a permit to carry the legal gun." *Id.* Unknown Officers ordered Plaintiff to exit his car. *Id.* When Plaintiff asked why, Unknown Officers told him: "[B]ecause I am giving you a lawful order and the Supreme Court states that I do not have to give you an excuse." *Id.*

Plaintiff told Unknown Officers that he did not consent to a search of his car. *Id.* By this point in the traffic stop, additional units, including a K9 unit, had arrived at the scene. *Id.* at 37. Unknown Officers and the police dog searched Plaintiff and his car. *Id.* Unknown Officers "took possession of" Plaintiff's driver's license and "ran a criminal records search of [Plaintiff], which concluded to negative results." *Id.* Once they had completed their search and recovered no contraband, Plaintiff alleges that Unknown Officers "willfully issued a Commonwealth of Kentucky Uniform Citation upon [Plaintiff] in an attempt to justify the traffic stop and search" of him and his car and "cover-up the illegal actions." *Id.* Plaintiff alleges that he was not "stopped because of any justified suspicion that they he was involved in criminal activity; rather, he was stopped by members of the Defendant City's Police Department because [he] was an African-American." *Id.*

Plaintiff sued in this Court. [DE 1]. Plaintiff's overarching theory is that "Defendant City's Police officers, Defendant Unknown Officers, while on police duty, routinely position[ed] their police vehicles in predominant [sic] African-American communities and disproportionately stopped and search black drivers' persons and vehicles . . . because they are African-American." [DE 2 at 40]. Plaintiff asserts claims under 42 U.S.C. § 1981 and § 1983, and state-law claims of battery and violations of Section 3 and Section 10 of the Kentucky Constitution. *Id.* at 33.

## II.    STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court need not accept a bare assertion of legal conclusions."  *Tackett v. M & G Polymers*, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009)  (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."  *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III.    DISCUSSION

Defendants argue that: 1) Louisville Metro and Conrad are entitled to sovereign immunity; 2) Conrad is entitled to qualified immunity; and 3) Plaintiff has failed to sufficiently plead his claims against Louisville Metro and Conrad.  [DE 7-1 at 84-88].

**A.    Immunity**

      1.    <u>Sovereign Immunity</u>

            *a.    State-law claims*

Defendants argue that "Plaintiff raised state law claims of respondeat superior and civil rights violation pursuant to Sections 3 and 10 of the Constitution of the Commonwealth of Kentucky.  Metro Government and Chief Conrad are entitled to sovereign immunity for all of these claims."  [DE 7-1 at 84].  Plaintiff does not respond to this argument.

Under Kentucky law, political subdivisions of the Commonwealth, including county governments, are entitled to sovereign immunity.  *Yanero v. Davis*, 65 S.W.3d 510, 525 (Ky. 2001).   The General Assembly addressed the immunity of such governments in KRS 67C.101(2)(e), providing that consolidated local governments, like Louisville Metro, "shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees." KRS 67C.101(2)(e); *see also Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 905, 907 (Ky. App. 2008) ("[Louisville] Metro Government is entitled to sovereign immunity");  *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004) (finding Lexington-Fayette Urban County Government immune from suit). Thus, absent an explicit statutory waiver, Louisville Metro is entitled to immunity.  *Jewish Hosp. Healthcare Servs., Inc.*, 270 S.W.3d at 907.  As there has been no explicit statutory waiver for these types of claims, Louisville Metro is entitled to sovereign immunity for Plaintiff's state-law

claims. *See Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003) ("If damages could be recovered against a county on the basis of *respondeat superior,* the concept of sovereign immunity would be largely nullified because state and county governments perform their ministerial functions by and through their agents, servants, and employees"); *Albin v. Louisville Metro Gov't*, No. 3:19-CV-576-DJH, 2020 WL 1310495, at *3 (W.D. Ky. Mar. 19, 2020) (finding Louisville Metro entitled to sovereign immunity and dismissing state-law claims). Conrad is likewise entitled to sovereign immunity. When sued in their official capacity, officials are "cloaked with the same immunity as the government or agency he/she represents." *Schwindel*, 113 S.W.3d at 169 (Ky. 2003) (citing *Yanero*, 65 S.W.3d at 522). As a result, the Court dismisses Plaintiff's state-law claims against Louisville Metro and Conrad in his official capacity.

### b.      *Punitive damages*

Defendants argue that Louisville Metro is immune from punitive damages claims under both §1983 and Kentucky law. [DE 7-1 at 94]. Plaintiff does not respond to this argument.

As to a municipality's immunity from punitive damages in a § 1983 claim, the answer is clear: "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Based on this binding precedent, the Court dismisses Plaintiff's claim against Louisville Metro for punitive damages under § 1983.

But as to punitive damages under Kentucky law the answer is less clear because neither Kentucky courts nor the Sixth Circuit have conclusively resolved this issue. That said, several courts in this circuit have considered this issue and found that a municipality, like Louisville Metro, is immune from punitive damages in state-law claims. *See D.H. v. Matti*, No. 3:14-CV-732-CRS, 2015 WL 4530419, at *10 (W.D. Ky. July 27, 2015) ("In light of the statute, *Burns, City of Newport,* and *Phelps,* this Court finds that the Kentucky Supreme Court would not allow for

punitive damages against a municipality . . . Accordingly, the Court concludes that the plaintiff

may not recover punitive damages the City of Brandenburg"); *Johnson v. Kentucky-Cty. of Butler*,

No. 1:12CV-37-JHM, 2014 WL 4129497, at *12 (W.D. Ky. Aug. 18, 2014) (dismissing plaintiff's

state-law punitive damages claims against Butler County); *Marksbury v. Elder*, No. 5:09-CV-24-

REW, 2011 WL 5598419, at *9 (E.D. Ky. Nov. 17, 2011) ("[N]either § 1983 nor Kentucky law

permits an award of punitive damages against a municipality"); *Dempsey v. City of Lawrenceburg*,

No. CIV.A. 3:09-33-DCR, 2010 WL 3825473, at *8 (E.D. Ky. Sept. 23, 2010) ("Plaintiffs claim

for punitive damages against the City of Lawrenceburg fails as a matter of law").  Based on the

weight of this persuasive precedent, the Court dismisses Plaintiff's state-law punitive damages

claims against Louisville Metro.

      2.   <u>Qualified Immunity</u>

      Conrad argues Plaintiff's claims against him should be dismissed based on the doctrine of

qualified immunity.

> [I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to
> dismiss on the basis of qualified immunity.  Although an officer's entitle[ment] to
> qualified immunity is a threshold question to be resolved at the earliest possible
> point, that point is usually summary judgment and not dismissal under Rule 12.

*Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (internal quotation and citations omitted).

There is no heightened factual showing that a plaintiff must make to survive a motion to dismiss

on qualified immunity grounds that differs from the plausibility standard established under *Iqbal.*

*Id.* at 427–28.  Although qualified immunity does protect the defendant from all burdens of

litigation, including "the burdens of discovery," *Iqbal*, 556 U.S. at 672 (citations omitted), the fact-

intensive nature of a qualified immunity defense makes it "difficult for a defendant to claim

qualified immunity on the pleadings *before discovery*," *Wesley*, 779 F.3d at 434 (quoting *Evans-*

*Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)).

        *a.     Federal claims against Conrad*

Defendants argue that Conrad is entitled to qualified immunity for Plaintiff's federal-law claims against him in his individual capacity.  [DE 7-1 at 86 ("Plaintiff has not identified any actions on the part of Chief Conrad that violated his federal or constitutionally protected rights . . . [T]here is no constitutional violation from utilizing traffic stops to make contact with individuals in high crime areas")].  Plaintiff disagrees: "Based on the information that the Defendants, City and Chief, had at the time, a reasonable officer, such as the Defendant Chief, would not have had a widespread practice so permanent and well-settled as to virtually constitute law.  The custom of unlawfully pulling over African Americas motorist, such as Mr. Daugherty, and searching their persons and property as to white motorists is a custom and practice that fairly represents municipal policy of deliberate indifference to police officers' misconduct."  [DE 14 at 210].

"In the interest of protecting public officers in the course of performing their discretionary duties from unduly onerous lawsuits under § 1983, the Supreme Court has recognized 'qualified immunity' for such officers, 'shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Lyons v. City of Xenia*, 258 F. Supp. 2d 761, 775 (S.D. Ohio 2003)  (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1986)).  "Qualified immunity is a defense only to individual capacity claims." *Meogrossi v. Aubrey*, No. 3:09CV-00301-JDM, 2011 WL 1235063, at *6 (W.D. Ky. Mar. 31, 2011)

"Under federal qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6242153, at *6 (W.D. Ky. Nov. 26, 2018)   (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Determining whether [a] defendant[ ] [is] entitled to qualified immunity involves two questions: First, based on applicable law and the facts viewed in the light most favorable to the plaintiff, has a constitutional violation occurred?"  *Id.*  (citing *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002)).  "Second, if the answer to the first question is yes, was the constitutional right 'clearly established' at the time of the violation[?]"  *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). "To survive a motion to dismiss on qualified-immunity grounds, both inquiries must be resolved in the Plaintiffs' favor." *Hoskins v. Knox Cty., Kentucky*, No. CV 17-84-DLB-HAI, 2018 WL 1352163, at *19 (E.D. Ky. Mar. 15, 2018).

Plaintiff alleges that Unknown Officers stopped him because he was an African-American. [DE 2 at 38].  Plaintiff also alleges that Conrad "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal quotation marks and citation omitted);  [DE 2 at 46 ("Unknown Defendants knew that Defendant Chief and City, acting through the chief policymaker Defendant Chief, had ratified, condoned, and acquiesced to their specific acts of  depriving citizens, such as the Plaintiff, of their Constitutional rights and abusive conduct through unauthorized, yet established, practices, customs and procedures")].  Police officers violate clearly established federal law when they stop a citizen based only on race.  *See United States v. Avery*, 137 F.3d 343, 355 (6th Cir. 1997)  ("If law enforcement adopts a policy, employs a practice, or in a given situation takes steps to initiate an investigation of a citizen based solely upon that citizen's race, without more, then a violation of the Equal Protection Clause has occurred"); *See also Whren*

*v. United States*, 517 U.S. 806, 813 (1996)  ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race"). Taking Plaintiff's factual allegations as true and drawing all inferences in his favor, Plaintiff has carried his burden at this stage of litigation by "by alleging facts plausibly making out a claim" that Conrad's conduct "violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).  Therefore, Conrad is not, at this time, entitled to qualified immunity for Plaintiff's federal claims against him in his individual capacity.  *See Feliciano v. Cty. of Suffolk*, 419 F. Supp. 2d 302, 313 (E.D.N.Y. 2005)  (denying qualified immunity on motion to dismiss because "all Plaintiffs have alleged that either: there was no reason to stop them; the stops were motivated by an impermissible race-based classification; or the John Does exceeded the scope of a reasonable stop");  *Peatross*, 818 F.3d at 246–47 ("The sufficiency of the complaint requires rejection of . . . qualified immunity at the dismissal stage.  Importantly, the law does not impose too heavy a  burden on the litigant at this early stage of the proceedings. It would be a perversion of justice to allow a person who might be crippled by officials acting under color of state law to then be crippled by the courts during the infancy of his or her case").

       *b.*     *State-law claims against Conrad*

"Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero*, 65 S.W.3d 510 at 522 (Ky. 2001).  But "an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is

absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* Thus, qualified immunity depends "on the function performed" and whether the official acted in "good faith." *Id.* at 521.

Acts involving supervision and training are consistently held to be discretionary functions. *See Nichols v. Bourbon Cty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014); *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 973 (6th Cir. 2006); *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 480 (Ky. 2006). Whether qualified immunity shields individuals from suit under Kentucky law depends on whether their acts of supervision and training were performed in good or bad faith. *Nichols*, 26 F. Supp. 3d at 642. Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523.

Taking Plaintiff's factual allegations as true and drawing all inferences in his favor, Plaintiff's claim survives, and qualified immunity does not apply at this stage of the case. Plaintiff alleges that Conrad "failed to properly train and supervise Defendant Unknown Officers and . . . knowingly allowed the said Defendant Unknown Officers to ignore due process and equal protection for African-American persons, knowingly allowing the said Defendant to target motorists for stops and searches on the basis of race and national origin, all under the color of law." [DE 2 at 42]. Whether Conrad performed these acts and whether he did so in good or bad faith is a question of fact. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) ("[I]f the qualified immunity questions presented are fact-intensive, the record may not be adequately developed to

evaluate the defense at the pleading stage under Rule 12(b)(6)").  For these reasons, qualified immunity cannot be determined at this stage of the proceedings.

**B.      Failure to State a Claim**

1.      § 1983 Claims

A plaintiff asserting a municipal liability claim under § 1983 must allege that the federal violation occurred because of a municipal policy or custom.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).  To properly assert a municipal liability claim, a plaintiff must sufficiently allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell,* 436 U.S. at 694.

*a.      Illegal official policy or custom*

To state a § 1983 claim on the basis of a municipal policy or custom, the plaintiff must "identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

Defendants argue that Plaintiff has failed to sufficiently state this claim: "[Plaintiff] has failed to establish that the constitutional violation was pursuant to a policy, custom or practice of Metro Government . . . There is no indication that the strategy [of stopping vehicles for traffic violations in high-crime areas] was in any way racially motivated.  Chief Conrad has stated the true motivation behind utilizing traffic stops in high crime areas, and that was violent crime

11

reduction."  [DE 7-1 at 89].  Plaintiff, on the other hand, argues that he has sufficiently stated this claim because he "has alleged statistical evidence . . . along with the incident alleged and prior issues regarding the Defendants' department policy or custom of acquiescence in unconstitutional conduct."  [DE 14 at 217].

The Court agrees.  Plaintiff has plausibly alleged that Louisville Metro has an illegal policy or custom of disproportionately stopping and searching African-Americans.  [*See* DE 2 at 40 ("The Defendant City's Police officers, Defendant Unknown Officers, while on police duty, routinely position their police vehicles in predominant African-American communities and disproportionately stopped and search black drivers' persons and vehicles, because they are African-American");  *See also Feliciano*, 419 F. Supp. at 312 (finding plaintiffs sufficiently stated a § 1983 claim based on a municipal policy or custom where "Plaintiffs allege[d] a specific policy of targeting African American and Hispanic males for traffic stops").  Furthermore, Plaintiff has plausibly connected this policy or custom to Unknown Officers' conduct in his case because he alleges they only stopped him because he was an African-American.   [*See* DE 2 at 38 ("Mr Daugherty was actually stopped because he is an African American")].

### b.  Failure-to-train

To state a § 1983 claim on the basis of a municipality's failure-to-train, the plaintiff must allege: 1) "the training or supervision was inadequate for the tasks performed"; 2) "the inadequacy was the result of the municipality's deliberate indifference"; and 3) "the inadequacy was closely related to or actually caused the injury."  *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).  As to the municipality's "deliberate indifference," the plaintiff must either allege: 1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this

particular area was deficient and likely to cause injury"; or 2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir. 2005); *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 409 (1997).

Plaintiff argues that he has sufficiently stated his failure-to-train claim: "Plaintiff was deprived of a constitutional right were [sic] the Defendants [sic] officers were engaging in biased law enforcement practices, based upon race. The Defendant City's police department had a hidden training policy that caused deliberate indifference to the constitutional rights of African-American drivers of whom the Defendants' police officers are likely to come into contact." [DE 14 at 221].

Defendants, on the other hand, contend that Plaintiff has failed to state this claim: "Plaintiff has pled no facts supportive of the allegation that LMPD Officers were not trained on constitutional prohibitions of discrimination. Such a conclusory statement does nothing to establish that the training provided to Defendant Officers was deficient or that Metro Government or Chief Conrad acted with deliberate indifference to Plaintiff's rights through the training provided to LMPD Officers." [DE 15 at 230].

Plaintiff has sufficiently stated a failure-to-train claim. Plaintiff alleges that Louisville Metro "failed to adequately train or supervise the police officers as to the discrimination laws and what constitutes unlawful discriminatory conduct." [DE 2 at 51]. Plaintiff also alleges that LMPD officers had a pattern of committing similar violations and that Louisville Metro was "deliberately indifferent" to them. *Id.* Based on Plaintiff's allegations, it is plausible that Louisville Metro "ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury" because: 1) the Courier-Journal published a series of articles

13

about these alleged unconstitutional violations; 2) multiple lawsuits have been filed against Louisville Metro and Conrad based on substantially similar allegations; and 3) Conrad testified before Louisville Metro Council about these alleged practices. *Fisher,* 398 F.3d at 849;  [See DE 2 at 38-40].  Although, as Defendants correctly note, the articles were published, the lawsuits were filed, and Conrad testified *after* Plaintiff was stopped, it is plausible that Louisville Metro was nonetheless on notice of these allegedly repeated and flagrant abuses *before* they percolated into public awareness.  Likewise, it is reasonable to infer that Louisville Metro "ignored a history of abuse" because it did not actively investigate these abuses until after articles were published about them.  Plaintiff has provided sufficient allegations to "nudge[] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

c.    *Failure-to-intervene claim*

To state a § 1983 claim on the basis of a failure-to-intervene, the plaintiff must allege that the Defendants "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 Fed. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997))  (internal quotation marks omitted). This is true regardless of whether the individual violating the plaintiff's constitutional rights is a fellow officer or a supervisor.  *Smith v. Heath*, 691 F.2d 220, 224-26 (6th Cir. 1982).  Defendants cannot be held liable, however, unless there was "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 Fed. App'x 631, 640 (6th Cir. 2013) (internal quotation marks and citation omitted).

Defendants argue that "[i]t is unclear from Plaintiff's Complaint whether he intends his Failure to Intervene claim to apply to Chief Conrad and/or Metro Government as well as the

14

Unknown Officer defendants. To the extent that this claim is being raised Chief Conrad or Metro

Government, it fails . . . Conrad was not present at the traffic stop and cannot be found to have had

an opportunity or the means to intervene." [DE 7-1 at 93].  Plaintiff does not respond to this

argument.

> In support of his failure-to-intervene claim, Plaintiff alleges:
>
> 104.   One or more of the Defendants Unknown Officers had a reasonable opportunity to prevent the other Defendants Unknown Officers-had they been so inclined but they failed to do so- from depriving Mr. Daugherty the following: (a) the freedom from unreasonable searches;  (b) freedom from unreasonable seizures in the form of unlawful detention and/or arrest by police officers; (c) freedom from a deprivation of Liberty without due process of law; (d) freedom from maliciously being subjected to criminal proceedings; and (e) the freedom to move about freely as a citizen of the United States of America.
>
> 105.  As a result of the Defendant Officers' failure to intervene, Mr. Daugherty was humiliated, embarrassed, and suffered emotional distress. In addition, Mr. Daugherty suffered financial losses stemming from legal fees related to the criminal prosecution of the case that was brought against him in the Kentucky Jefferson County District Court.
>
> 106.  The misconduct described in this Cause was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others.
>
> 107.  The misconduct described in this Cause was undertaken pursuant to the policy and practice of Defendant City's Police Department in the manner described above and fully herein this Complaint.
>
> 108. The misconduct described in this Cause was undertaken by the said Defendants Unknown Officers within the scope of their employment and under color of law such that their employer, Defendant City, is liable for their actions.
>
> [DE 2 at 52].

> Plaintiff has failed to sufficiently state this claim against Louisville Metro and Conrad.

Based on his allegations, Plaintiff's claim appears to be directed primarily at Unknown Officers.

Plaintiff does not allege, even in a conclusory fashion, that Conrad failed to intervene in his

situation. Nor has he plausibly alleged that Louisville Metro failed to intervene. Thus, the Court dismisses Plaintiff's failure-to-intervene claim against Louisville Metro and Conrad.

    2.    <u>§ 1981 Claim</u>

To state a § 1981 claim, a plaintiff must allege that: 1) "he is a member of a racial minority; 2) that the defendant acted with an intent to discriminate against him on the basis of his race; and 3) that the defendant's race discrimination concerned one or more of the protected activities enumerated in Section § 1981(a)." *Cunningham v. Sisk*, 136 F. App'x 771, 775 (6th Cir. 2005) (citing *Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir.1996)). § 1981(a) provides that all persons within the United States "shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Defendants argue that "[a] §1981 claim is inappropriate against government actors, and the proper claim is that of §1983 . . . [T]he only damages remedy available for a §1981 claim is through §1983." [DE 7-1 at 91]. In response, Plaintiff cites non-binding authority and asserts that "[a]lternative causes of action other than a claim for deliberate indifference under 42 U.S.C § 1983 may be commenced against the same defendants. It is possible that other federal statutes and/or state common-law claims may also be asserted, in addition to the civil rights cause of action." [DE 14 at 218].

Plaintiff's § 1981 claim against Louisville Metro and Conrad fails because 42 U.S.C. § 1983 is the exclusive mechanism for bringing suits against state actors for violation of rights guaranteed by § 1981. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735 (1989) (holding that § 1983 provides the exclusive remedy for damages for the violation of rights guaranteed by § 1981

16

when a state actor is the alleged violator); *McCormick v. Miami Univ.,* 693 F.3d 654, 660 (6th Cir.2012)  (concluding that § 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his official or individual capacity); *Grinter v. Knight,* 532 F.3d 567, 577 (6th Cir. 2008) ("§ 1983 provides an exclusive remedy for violations against state actors sued in their official capacities"; thus "[a]n official capacity lawsuit against . . . a state actor, for constitutional violations, such as race discrimination, cannot be brought under § 1981"). Therefore, because § 1983 is the sole vehicle for Plaintiff's claims against Conrad and Louisville Metro, the Court dismisses his § 1981 claim against them.  *See Wireless Telecom Coop., Inc. v. Louisville/Jefferson Cty. Metro Gov't,* No. 316CV00513GNSRSE, 2019 WL 2361049, at *2 (W.D. Ky. June 4, 2019)  ("Because Plaintiff brings its claims against Louisville/Jefferson County Metro Government, its claims against them for depriving it of its constitutional rights cannot be brought under Section 1981");  *Direct Constr. Servs., LLC v. City of Detroit*, No. 18-CV-12356, 2019 WL 1897128, at *8–9 (E.D. Mich. Apr. 29, 2019), *aff'd sub nom. Direct Constr. Servs., LLC v. City of Detroit, Michigan*, 820 F. App'x 417 (6th Cir. 2020)  (dismissing § 1981 claim against municipality and state actors);  *Benton v. City of Louisville Family Court Div.*, No. 3:14CV-263-S, 2014 WL 4063929, at *3-4 (W.D. Ky. Aug. 18, 2014)  (dismissing § 1981 claim against state actors).

3.    State-Law Claims

Plaintiff brings a state-law claim under Section 3 and Section 10 of the Kentucky Constitution against Louisville Metro and Conrad in his individual capacity.  [*See* DE 2 at 59]. Defendants argue that "Kentucky does not recognize a claim under the Kentucky Constitution. The Kentucky Supreme Court has specifically declined to 'exercise judicial authority' and 'create a new tort cause of action in Kentucky to provide money damages for constitutional violations.'

*St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 536-37 (Ky. 2011)."  [DE 7-1 at 93].  Plaintiff counters that "alternative causes of action other than a claim for deliberate indifference under 42 U.S.C. § 1983 may be commenced against the same defendants.  Other federal statutes and/or state common-law claims may also be asserted, in addition to the civil rights cause of action."  [DE 14 at 221].

Defendants are correct: "Kentucky law does not recognize a cause of action for alleged violations of Kentucky constitutional rights."  *Faul v. Bd. of Educ.*, No. 5:12-CV-277-KSF, 2013 WL 1511746, at *3 (E.D. Ky. Apr. 9, 2013) (citing *St. Luke Hospital, Inc. v. Straub*, 354 S.W.3d 529, 536-537 (Ky. 2011));  *See Crosby v. Univ. of Kentucky*, 863 F.3d 545, 558 (6th Cir. 2017) ("This leaves Crosby's complaint as requesting only monetary damages in connection with his claim against the individual defendants for violating the Kentucky Constitution. And because Kentucky law does not recognize such a cause of action, the district court did nor err in dismissing Crosby's claim");  *K.K. by & through J.K. v. Clark Cty. Bd. of Educ.*, 439 F. Supp. 3d 905, 916 (E.D. Ky. 2020)  ("Generally speaking, plaintiffs who believe their Kentucky constitutional rights have been violated may attempt to remedy the alleged injuries by filing traditional tort actions");  *Conn v. Deskins*, 238 F. Supp. 3d 924, 930 (E.D. Ky. 2017)  (Thapar, J.)  ("The problem is that Kentucky has not recognized a private right of action akin to *Bivens* to recover money damages for a violation of the state's constitution").  Therefore, the Court dismisses Plaintiff's claims brought under the Kentucky Constitution against Louisville Metro and Conrad in his individual capacity.

## IV.   <u>CONCLUSION</u>

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** [DE 7].

Copies to:      Counsel of record

19